### United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 09-B-74365 |
|---|---|---|---|
| DATE | December 21, 2011 | ADVERSARY NO. | 10-A-96028 |
| CASE TITLE | Steven Conner and Sandra M Conner, Debtors<br><br>Dan Borowiak, Plaintiff<br><br>v.<br><br>Steven Conner, Defendant. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, judgment is entered in favor of the Defendant on all counts.

■[ For further details see text below.]

### MEMORANDUM OPINION

#### Factual Background

Before closing its doors in 2009, the River Street Press Inc. printed mailers, stationary and financial documents. At least in the years in question, Steve Conner was a shareholder and president of the company. The Plaintiff, Dan Borowiak, made an investment in the company in the summer of 2007, which he alleges was induced by fraudulent misrepresentations made by Mr. Conner.

Mr. Borowiak had known about the River Street Press since he was a kid, and between 2004 and 2007, he had purchased $60,000 in non-voting preferred shares of the company. In 2007, Mr. Conner approached Mr.

Borowiak and asked if he was interested in buying out the common voting shares of his partner, Keith Potter, who wanted to get out of the company. Mr. Conner indicated that the shares Mr. Potter was selling constituted 33-1/3% of the common stock of the company. Mr. Borowiak testified that he replied to Mr. Conner by stating that he wanted to be a 50% owner of the company. Mr. Borowiak alleged that Mr. Conner told him that "could be arranged" and Mr. Conner could put in 17% out of his own shares to facilitate the deal. Mr. Borowiak testified that he thought Mr. Conner owned the remaining 66-2/3% of the shares not owned by Mr. Potter but did not testify that Mr. Borowiak told him that. Nor did he testify that it would have mattered to him who the other owners were so long as he owned 50% of the company.

Mr. Borowiak did basically no investigation of the financial status of the company other than to look at a profit and loss statement and balance sheet for 2006 and the company's tax returns. He also asked almost no questions. But the parties agreed on a purchase price of $180,000 for Mr. Potter's shares, and they entered into a written agreement signed by Mr. Conner, Mr. Borowiak and Mr. Potter on or about June 28, 2007. Mr. Borowiak admitted that he prepared the agreement to document the purchase, though he said he used a form that Mr. Conner had provided him. It provided that Mr. Potter was selling his 33-1/3% interest in the company to Mr. Conner for $180,000, with $65,000 to be paid immediately, and the remaining $115,000 to be paid in 36 months, either as a lump sum or "over 60 months with a 8 % interest on the balance with a no pre-penalty clause." (P's Ex. 1). Mr. Borowiak paid the $65,000 immediately by check, but the testimony was unclear if he ever paid any of the remaining $115,000 to Mr. Potter.

One problem with the agreement was that it referred to the wrong company. Rather than refer to the River Street Press, Inc., the written agreement stated that it was an agreement to sell a 33-1/3% partnership interest in "RSP Associates," a general partnership. Apparently RSP Associates was an entity that had at one time owned a building for the company, but as of 2007 had no assets or business activity. However, this appears to have been simply a mistake. Based on the scattered evidence and testimony provided, it appears that all three parties intended for the sale to be of shares in River Street, not RSP. The River Street Press's 2007 tax return listed Mr. Borowiak as owning 33-1/3% of the common shares of River Street, and the company's 2008 tax return listed Mr. Borowiak as owning 50% of the company.

Sometime soon after he made his investment, Mr. Borowiak became vice president and corporate secretary of the company. After reviewing some of the financial information of the company, he learned that the company owed a lot of money on the credit cards of several former shareholders. Concerned about the high interest rate on that debt, Mr. Borowiak offered to loan the company $40,000 by taking out a loan secured by his insurance business. Mr. Borowiak also loaned the company an additional $25,000 at some point when it was needed to make payroll. Between 2007 and 2009, the company deteriorated, and Mr. Conner and Mr. Borowiak sparred. In particular, Mr. Borowiak did not approve of the way Mr. Conner's daughter, who was an employee but not an officer, was not having insurance premiums deducted from her salary. In June 2009, Mr. Conner resigned from the company. Mr. Borowiak took over as president, but soon decided to close the company's doors. The company filed for bankruptcy under Chapter 7 on July 22, 2009. Mr. Conner found employment at another printing company after he resigned, but himself filed for protection under Chapter 7 with this Court on October 6, 2009.

## Discussion

To receive an exception from discharge under Section 523(a)(2)(A), a plaintiff must "show the following: (1) that [the debtor] made a false representation or omission, which he either knew was false or made with reckless disregard for the truth; (2) that [the debtor] possessed an intent to deceive or defraud; and (3) that [the plaintiff] justifiably relied on the false representation." Reeves v. Davis (In re Davis), 638 F.3d 549, 553 (7th Cir. Mar. 14, 2011). "A bankruptcy court applies a preponderance of the evidence standard when making dischargeability determinations under § 523(a)." Ojeda v. Goldberg, 599 F.3d, 712, 716 (7th Cir. 2010).

The Plaintiff's first problem is that he did not identify any specific representations that Mr. Conner made, nor did he demonstrate that any such representation was false. Thus, while the Plaintiff apparently thought Mr. Connor owned 66.6% of the company in 2007, he did not allege or provide evidence that Mr. Conner made such a representation. The Plaintiff argues that he was not aware that Mr. Perrin owned shares in the company and that he was not aware of certain debts of the company. But, there was no evidence that the Plaintiff ever asked for such information. The closest the Plaintiff comes to pointing out a specific misrepresentation is that he says he was provided copies of a 2006 profit and loss and balance sheet for the company which did not include certain credit card debts. But, it is undisputed that Mr. Conner did not prepare those financial documents. Nor is it alleged that Mr. Conner specifically provided them to Mr. Borowiak. Instead, it appears from the testimony that Mr. Conner simply told the secretary to give Mr. Borowiak access to whatever financial documents he wanted to see. Therefore, it is difficult to say the documents were a representation *by the Debtor*. Perhaps the Plaintiff is arguing that it was an omission for Mr. Conner to fail to correct any inaccuracy in the documents, but there was no evidence that he was aware of the inaccuracies or omissions in those documents. Mr. Borowiak admitted that Mr. Conner was not an accountant.

Nor did the Plaintiff demonstrate any fraudulent acts by Mr. Conner. The evidence showed that the reference to RSP Associates in the purchase agreement was simply a mistake, and not intended by any of the parties to the agreement. Therefore, the evidence did not show that Mr. Conner was trying to trick Mr. Borowiak into buying an empty shell partnership. Nor did the evidence show that Mr. Conner was trying to trick Mr. Borowiak into paying too much for the interest in River Street. Mr. Borowiak admitted that he saw the profit and loss statement and tax returns showing losses before he made the investment. He also admitted that he saw the 2006 balance sheet showing liabilities of $1.6 million against assets of only $600,000. Therefore, Mr. Borowiak should have known what sort of company he was getting into. But, Mr. Borowiak testified that, in spite of the condition shown in the financial statements, he was optimistic that he could help turn the company around.

Finally, even if any statements by Mr. Conner constituted misrepresentations or omissions, the Plaintiff failed to demonstrate that he "justifiably relied on them." The Seventh Circuit Court of Appeals has explained justifiable reliance as follows:
> Justifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Under the justifiable reliance standard, a creditor has no duty to investigate unless the falsity of the

> representation would have been readily apparent. But the justifiable reliance standard is not an objective one. Rather, it is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff.

Ojeda, 599 F.3d at 717 (internal citations omitted). Not only did Mr. Borowiak fail to take a cursory inquiry into the finances of the company, despite having a business degree and having invested in companies before, there was no indication that any purported error or omission in the financial statements would have changed his decision to invest in the least. He admitted that he took no step to try to come up with a valuation of the company, and that the purchase price was simply what was offered by Mr. Potter. He admitted that he saw a balance sheet showing liabilities for the company exceeding assets by almost $1 million. Therefore, it seems unlikely that knowing about another $40,000 of debt, even if omitted, would have changed Mr. Borowiak's decision or affected the price he sought to pay. Even when he found out about the additional debt, his reaction was not to complain or seek a refund, but to put more of his own money into the company. The same is true about the ownership of shares. The evidence showed that Mr. Borowiak was concerned about owning 50% of the company, not about who owned the other 50%. Therefore, there was no evidence that it would have affected Mr. Boriwiak's decision to invest had he known that Mr. Conner had sold some of his other shares to Mr. Perrin under a repurchase agreement to be repaid within 3 to 5 years.

### Conclusion

For the foregoing reasons, the Plaintiff having failed to demonstrate that he is entitled to the relief sought, judgment shall be entered in favor of the Defendant on all counts. The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

December 21, 2011

Judge Manuel Barbosa

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on December 21, 2011.

**George P Hampilos**
Hampilos & Langley, Ltd.
308 West State Street
Suite 210
Rockford, IL 61101

**Steven Conner**
1586 Deer Path Lane
Franklin Grove, IL 61031

_Kimberly Conrad_
Kimberly Conrad, Judicial Assistant